IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | |
| | ) | No. 21-cr-10064-IT |
| KOFI OSEI a/k/a | ) | |
| PAUL PROIA a/k/a | ) | |
| KENNETH BUCK a/k/a | ) | |
| JEFFREY ANASHE | ) | |
| | ) | |
| Defendant | ) | |

## GOVERNMENT'S SENTENCING MEMORANDUM

Beginning no later than 2016 and continuing through at least December 2020, defendant Kofi Osei participated in a scheme to steal more than $10 million from hundreds of romance scam victims. Osei was the most prolific of the U.S.-based money launderers, opening at least 77 bank accounts using fake passports in the names of aliases to which victims sent more than $4 million in funds. Once victim funds were received, Osei quickly withdrew them or transferred them to one of his other alias accounts to conceal the source of the funds. What is more, Osei recruited and worked with at least seven others to do the same (*e.g.*, members of his soccer team and his girlfriend), and also coordinated with individuals located overseas. The scheme deprived victims, who were often elderly, of substantial amounts of money, and in some instances, their life savings. For his conduct, Osei should be sentenced to 108 months imprisonment, 24 months of supervised release, restitution of $4,293,589.72, and forfeiture (*see* Dkt. 87).

I.      *Summary of Offense Conduct*

Osei and his co-conspirators operated what is known as a "romance scam," a type of fraud in which co-conspirators create fictitious profiles on online dating or social websites.  They then use these online dating profiles to capitalize on their (often elderly) victims' desire to find companions, gain their trust, and, once that trust is gained, direct victims to transfer money under false pretenses.  Osei played two roles in the scheme.  First, he personally opened bank accounts using fake identification documents to receive victim funds, quickly withdraw funds after victims deposited money into those accounts, and transferred the money to co-conspirators, including by using victim funds to purchase cars at auction and shipping the cars to Nigeria, where they were sold and the proceeds distributed to co-conspirators.  Between at least 2016 through at least December 2020, Osei used at least seven fake identities—"Jeffrey Anashe," "Paul Proia," "Kenneth Buck," "Manuel Abdalla," "Andrew Matses," "Author Ivey," and "David Lebel"—to open 77 bank accounts at various local banks, both individually and under fake businesses he registered with the Secretaries of State of Massachusetts, Vermont, and Georgia—"PPA Logistics LLC," "KFB LLC," "Mandal Enterprises LLC," "Mitsubishi Caterpillar Forklift Europe BV LLC," "Mac & Mac LLC," "AJV LLC," and "L & LD LLC."  More than $4.2 million flowed through these accounts in the five years Osei participated in the scheme, of which he received approximately 20%, or more than $800,000.

Second, Osei recruited others to the scheme, primarily from his soccer team.  Three of those individuals have already pleaded guilty for their roles in the scheme.  *See United States v. Osemwegie*, No. 21-cr-10219-DJC; *United States v. Okafor*, No. 22-cr-10095-DPW; *United States v. Umeh*, No. 23-cr-10013-WGY.  Osei also recruited his girlfriend, a single mother who received only a few thousand dollars for participating in the scheme at Osei's direction.  Indeed, WhatsApp

messages obtained from Osei's phone pursuant to a court-authorized search warrant demonstrate that Osei directed her every move, from when to go to the bank to what to do with the money, including sending it to a co-conspirator at a time when Osei was out of the country. Collectively, the co-conspirators of Osei that the government has identified opened an additional 90 bank accounts using fake identities, through which more than $6.4 million in victim funds flowed.

Among Osei's victims was a woman now in her mid-60s from Jacksonville, Florida, who sent $201,000 to accounts Osei and his co-conspirators controlled. This victim sent the funds under the belief that they were for her online boyfriend, "William Karlsen," who purportedly needed funds for his oil rig and to secure his release from custody following an explosion on the rig. Another victim was a woman now in her late-40s from Montecito, California, who sent $65,000 to an account Osei controlled. This victim sent the funds under the belief that they were to support employees injured in a work accident at the overseas worksite of her online boyfriend, "William Woodcox," and to aid his release after he was purportedly arrested in connection with that accident. This victim has been left financially and emotionally devastated by this scam. A third victim was a woman now in her late 50s from Bradenton, Florida, who sent $70,000 to an account Osei controlled. This victim sent the funds under the belief that they were to buy drilling equipment for her online boyfriend, "Harry Mikesell." This victim was also led to believe that her own financial stability was in jeopardy because she agreed to co-sign one of "Mikesell's" bank accounts, and she paid money to purported banking authorities to unfreeze the account and restore her own credit. In total, more than 150 victims transferred money to bank accounts that Osei personally controlled.

II.      *Calculation of the Guidelines*

The government agrees with the Probation Office that Osei's total offense level is 31.  That

calculation reflects:

- a base offense level of 7 under Section 2B1.1(a)(1);

- an 18-level increase under Section 2B1.1(b)(1)(G) because the offense involved a loss of more than $3.5 million but not more than $9.5 million;

- a 2-level increase under Section 2B1.1(b)(2)(A)(i) because the offense involved 10 or more victims;

- a 2-level increase under Section 2B1.1(b)(11)(A)(ii) because the offense involved the possession or use of an authentication feature;

- a 2-level increase under Section 2S1.1(b)(2)(B) because Osei was convicted under 18 U.S.C. § 1956; a 3-level increase under Section 3B1.1(b) because Osei was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive; and

- a 3-level decrease pursuant to Section 3E1.1 for acceptance of responsibility.

The resulting Guidelines sentencing range is between 108-135 months.

The defendant objected to the 2-level enhancement under Section 2B1.1(b)(11)(A)(ii),

which applies "[i]f the offense involved (A) the possession or use of any . . . (ii) authentication

feature."  Application Note 10 to Section 2B1.1 provides that "authentication feature" has the

meaning given in 18 U.S.C. § 1028(d)(1).  That statute defines "authentication feature" as "any

hologram, watermark, certification, symbol, code, image, *sequence of numbers or letters*, or other

feature that either individually or in combination with another feature is used by the issuing

authority on *an identification document*, document-making implement, or means of identification

to determine if the document is counterfeit, altered, or otherwise falsified."  18 U.S.C. § 1028(d)(1)

(emphasis added); *see also id.* § 1028(d)(3) (defining "identification document" as "a document

made or issued by or under the authority of . . . a foreign government" or "political subdivision of

a foreign government . . . which, when completed with information concerning a particular individual, is of a type intended or commonly accepted for the purpose of identification of individuals.").

The above-described enhancement applies here.  There is no dispute that the defendant obtained and used fake passports that contained, among other things, fake passport numbers. Those passport numbers constitute a "sequence of numbers" that are "used by an issuing authority on an identification document . . . to determine if the document is counterfeit, altered, or otherwise falsified."  18 U.S.C. § 1028(d)(1); *see also id.* § 1028(d)(3) (providing a definition of "identification document" that includes foreign passports).  According to the defendant, the enhancement should not apply because his fake passports did not belong to an "actual (*i.e.* not fictitious) individual."  Def. PSR Obj'n #5.  However, that argument focuses solely on the definition of a "means of identification," under Application Note 1 to Section 2B1.1, which requires a connection to "an actual (*i.e.*, not fictitious) individual."  The applicable basis for applying the enhancement in this case—the use of an "identification document"—does *not* contain that requirement.  18 U.S.C. § 1028(d)(3) (defining "identification document"); *see also* 18 U.S.C. § 1028A(a)(1), (2) (for the purposes of the aggravated identity theft statute, distinguishing between a "means of identification," which has to belong to "another person," and a "false identification document," which does not); *United States v. Aderinoye*, 33 F.4th 751, 755 (5th Cir. 2022) (noting a "lack of authority" for the argument that a fake passport cannot constitute an "identification feature" because it does not "relate to an actual person").

III.     *Sentencing Recommendation*

The government recommends a sentence of 108 months imprisonment, 24 months of supervised release, $4,293,589.72 in restitution, and forfeiture.

      A.   *The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant.*

Osei's crime was serious and caused significant harm.  He and his co-conspirators capitalized on lonely, often elderly, individuals' desire to find companions, using promises of love to persuade victims to wire large sums of money into accounts that Osei and his co-conspirators opened using counterfeit foreign passports.  Some of these victims depleted their life savings. While Osei may not have wooed the victims personally, he was still the key to the scheme: he opened up the fraudulent bank accounts, received funds he knew were derived from illegal activity, and funneled a portion of those funds back to his co-conspirators outside of the United States.  The messages between Osei and his co-conspirators obtained from Osei's phone and the readiness to withdraw the money so promptly after receipt is also an indication of the degree of coordination among the members of the conspiracy, which, as noted above, obtained millions of dollars from victims.  The losses the fraud caused, the number and identity of the victims, and the sophisticated manner in which it was carried out are measures of the seriousness of the offense and counsel in favor of a lengthy term of imprisonment.

The length and complexity of this scheme also reflects on the history and characteristics of Osei himself.  Over a five-year period Osei used at least seven fake identities and multiple fake businesses to open 77 bank accounts at various local banks.  More than $4.2 million flowed through these accounts during those five years, of which he received approximately 20%, or more than $800,000.  Osei also recruited others to participate in this scheme.  This was not a lapse in judgment of an otherwise law-abiding person; Osei's actions reflect his tradecraft and the person he decided

to become.  Further, his motive was purely personal gain resulting from victims' losses.  He did

not act out of coercion, duress, or desperation.  His participation was not the result of a momentary

lapse in judgment or weakness of will.  Rather, he demonstrated a prolonged willingness to engage

in an exploitation of victims for the sake of personal profit.  For a financial crime, these factors

point toward the highest degree of culpability.

      B.   *The Need for the Sentence to Promote Respect for the Law, to Provide Just
Punishment, and Afford Adequate Deterrence to Criminal Conduct*

General deterrence is particularly important here.  Online scams taking advantage of the

lonely and elderly are rampant.  *See, e.g.*, Federal Trade Commission, "Romance scammers'

favorite lies exposed," Feb. 9, 2023, available at https://www.ftc.gov/news-events/data-

visualizations/data-spotlight/2023/02/romance-scammers-favorite-lies-exposed#ft1        (reported

losses from online romance scams reached "staggering" $1.3 billion across 70,000 victims in

2022).[1]  The scam is easy to complete, and the huge amounts of money make it all too attractive

to carry out, as evidenced by the number of individuals Osei was able to recruit to the scheme,

including individuals like Francis Okafor, who worked as a Corrections Officer at the Suffolk

County Sheriff's Office when he was arrested for his role in the scheme.  Often, those "wooing"

the victims are located overseas, out of the reach of the government's jurisdiction.  But they are

totally dependent on participants in the United States, like Osei and others Osei recruited, to

---

[1] *See also* Federal Trade Commission, "Reports of romance scams hit record highs in
2021," Feb. 10, 2022, available at https://www.ftc.gov/news-events/data-visualizations/data-
spotlight/2022/02/reports-romance-scams-hit-record-highs-2021 (reported losses reached $547
million in 2021); Federal Trade Commission, "Romance scams take record dollars in 2020," Feb.
10, 2021, available at https://www.ftc.gov/news-events/blogs/data-spotlight/2021/02/romance-
scams-take-record-dollars-2020 (reported losses reached $304 million); Federal Trade
Commission, "New FTC Data Show Consumers Reported Losing More Than $200 Million to
Romance Scams in 2019," Feb. 12, 2020, available at https://www.ftc.gov/news-events/press-
releases/2020/02/new-ftc-data-show-consumers-reported-losing-more-200-million        (reported
losses reached $201 million, up 40% from 2018).

accomplish the scheme.  Osei's sentence should reflect the need to deter the many others who might otherwise engage in the same sort of misconduct if there is to be any chance of driving down the billions in losses to victims annually.  *United States v. Martin*, 455 F.3d 1227, 1240 (11th Cir. 2006) ("Because economic and fraud-based crimes are more rational, cool and calculated then sudden crimes of passion or opportunity, these crimes are prime candidates for general deterrence.") (internal quotation omitted).

### C.   The Need to Avoid Unwanted Sentencing Disparities Among Defendants Guilty of Similar Conduct

A sentence of 108 months reflects Osei's substantially greater culpability than his co-conspirators, two of whom have been sentenced thus far: (1) Macpherson Osemwegie, who Judge Casper sentenced to 32 months in prison; and (2) Francis Okafor, who Judge Woodlock sentenced to 24 months in prison.  Osemwegie and Okafor each opened a fraction of the number of accounts that Osei opened—16 and 14 accounts, respectively, compared to Osei's 77 accounts.  The also caused a fraction of the loss that Osei caused—six times less for Osemwegie, and three times less for Okafor.  What's more, Osei recruited both Osemwegie and Okafor to the scheme from his soccer team.  A sentence of 108 months is three times more than Osemwegie's sentence and fourt times more than Okafor's sentence.  That longer sentence appropriately reflects the magnitude of Osei's culpability when compared to those co-conspirators.[2]

A sentence of 108 months is also consistent with sentences imposed on other romance scam defendants in this district.  In *United States v. Balogun*, 19-cr-10230-DPW, the defendant pled guilty to an indictment charging one count of money laundering conspiracy arising from similar romance and business email compromise scams.  Judge Woodlock sentenced Balogun to 42

---

[2] Okafor's sentence also reflected additional considerations which were addressed under seal in his case.  *See, e.g.*, PSR ¶ 37(a).

months' incarceration.   Notably, Balogun's charge related to only one fraudulently opened account, and the intended loss was $531,981—approximately an eighth of the loss Osei caused.

In *United States v. Iyalekhue*, 20-cr-10208-RWZ, the defendant pled guilty to an information charging one count of conspiracy to commit mail and wire fraud and one count of money laundering in connection with a similar romance scam.   Judge Zobel sentenced Iyalekhue to 63 months incarceration.   Notably, Iyalekhue opened 10 fraudulent bank accounts and caused a loss of $813,098, approximately five times less than Osei.

Finally, in *United States v. Musau*, the defendant pled guilty to an information charging one count of conspiracy to commit bank and wire fraud in connection with another romance scam. Judge Burroughs sentenced Musau to 44 months in prison.   Musau was brought into the scheme by her boyfriend and opened only 7 bank accounts.   With her boyfriend, she caused more than $950,000 in loss, almost 4.5 times less than Osei.

A sentence of 108 months' incarceration reflects the increased number of accounts Osei opened, significantly greater loss Osei caused, and Osei's more culpable role as an individual recruiting others to the scheme.

IV.     Conclusion

For the reasons herein, the government recommends a sentence of 108 months imprisonment, 24 months of supervised release, restitution of $4,293,589.72, and forfeiture as laid out in the government's forfeiture motion (Dkt. 87).

Respectfully submitted,

RACHAEL S. ROLLINS
United States Attorney

By:     */s/ Christopher J. Markham*
        KRISTEN A. KEARNEY
        CHRISTOPHER J. MARKHAM
Dated: March 14, 2023                     Assistant U.S. Attorneys

## <u>CERTIFICATE OF SERVICE</u>

I, Christopher J. Markham, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

By:     */s/ Christopher J. Markham*
        CHRISTOPHER J. MARKHAM
        Assistant U.S. Attorney